**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2355-20

WEST RAC CONTRACTING
CORP.,

     Plaintiff-Respondent,

v.

SAPTHAGIRI, LLC,

     Defendant-Appellant.

_____

Argued February 28, 2022 – Decided March 28, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7918-20.

Scott H. Bernstein argued the cause for appellant (Skolnick Legal Group, PC, attorneys; Martin P. Skolnick and Scott H. Bernstein, on the briefs).

Parshhueram T. Misir argued the cause for respondent (Forchelli Deegan Terrana, LLP, attorneys; Parshhueram T. Misir, on the brief).

PER CURIAM

Defendant Sapthagiri, LLC appeals from orders dismissing its counterclaim seeking vacatur of an arbitration award entered in favor of plaintiff West Rac Contracting Corp. and affirming the award. The arbitration award resolved plaintiff's claims for compensation for certain costs incurred during periods of delay in the construction of a hotel. On appeal, defendant argues the trial court erred by failing to vacate the arbitration award because the arbitrator manifestly disregarded the law, exceeded his powers, refused to hear relevant and pertinent evidence, and was evidently partial towards plaintiff. Unpersuaded, we affirm.

I.

The parties contracted for plaintiff to serve as the construction manager for the construction of a hotel on defendant's property. The parties executed four separate agreements (collectively the "Contract Agreements") related to the construction. Three of the agreements were executed on May 27, 2015, and, on December 21, 2017, the parties entered into a Rider to the Contract (the GMP Rider). The Contract Agreements provide that any disputes shall resolved by the American Arbitration Association (AAA) in accordance with its "Construction Industry Arbitration Rules."

A-2355-20

The Contract Agreements limit plaintiff's compensation to the "Contract Sum," which is comprised of the "Cost of Work . . . plus the Construction Manager's Fee." The three May 27, 2015 agreements provide that the "Contract Sum" would not exceed the Guaranteed Maximum Price (the GMP), and that the GMP would be agreed upon in a subsequently executed GMP amendment. The May 27, 2015 agreements further provided that to the extent the "Cost of Work" exceeded the GMP, plaintiff would "bear such costs in excess of the [GMP] without reimbursement or additional compensation."

On December 21, 2017, the parties executed the GMP Rider setting a GMP of $25,900,925.55 and establishing a construction completion date of May 8, 2019. The GMP Rider further included the following provision addressing plaintiff's entitlement to compensation in the event of construction delays: "[i]n the event that the [c]onstruction phase is delayed through no fault of [plaintiff], [plaintiff] shall be entitled to the additional or extended general conditions, if any, it incurs as a result."

The Contract Agreements provide the GMP is subject to adjustment through the execution of change orders. A change order is defined as a "written instrument" in which the parties may agree to a "change in Work," changes to the "Contract Sum," and changes to the "Contract Time," without invalidating

3

the Contract Agreements. The agreements provided that a change order may only be issued in the event of a delay "beyond [plaintiff's] control" or for other reasons authorized by defendant.

Construction of the hotel was not completed by the GMP Rider's May 8, 2019 completion date. A temporary certificate of occupancy was not issued until April 16, 2020, and construction was not substantially completed until April 30, 2020. However, prior to completion of construction, the parties executed numerous change orders extending the completion date and increasing the GMP.

In July 2019, plaintiff filed a demand for arbitration asserting it a claim of "its extended costs due to [seven] months of delay" in the completion of the hotel "caused by [defendant] and its design professionals." Defendant filed an answer and counterclaim alleging plaintiff breached the parties' contract and violated the covenant of good-faith and fair-dealing. There is no verbatim record or transcription of the ensuing five-day arbitration.

In his December 9, 2020 award, the arbitrator determined plaintiff was entitled to compensation for some, but not all, of its claimed expenses related to the construction delays. He concluded that under the GMP Rider plaintiff was "entitled to recover its proven general conditions and general requirements for

4

the period of actual delay for which it was granted time extensions in the executed change orders."[1] More particularly, he found the GMP Rider "expressly allowed recovery to [plaintiff] for periods of delay for which it bore no responsibility." The arbitrator also rejected some of plaintiff's claims for increased costs allegedly caused by the delays, finding one of plaintiff's requested claims was barred by the Contract Agreements' waiver of consequential damages.

The arbitrator determined plaintiff was entitled to $1,101,488.71 in increased costs due to the delays and found defendant had paid plaintiff $549,970 of the sum under protest prior to the arbitration. The arbitrator concluded plaintiff was due a total "net award of $551,518.71."

During the arbitration, defendant requested the arbitration award include a reservation of defendant's right to litigate in separate proceedings any claims

---

[1] The Contract Agreements do not clearly define "general conditions" or "general requirements." However, the GMP Rider distinguishes between the two, stating "[t]he GMP includes the [plaintiff's] general conditions which are intended to compensate [plaintiff] only for its management and associated burdens." The GMP Rider provides general requirements are not part of plaintiff's general conditions, but instead are "included in the GMP as a Cost of Work." It also includes examples of "general requirements such as site trailer, phones, blueprinting, laborers, temp toilets, temp fencing, etc." Before the trial court, defendant's counsel offered plaintiff's payment of employees as an example of a general condition. General requirement costs were broadly characterized by defendant's counsel as "on-site expenses."

A-2355-20

defendant had or might have in the future against plaintiff for indemnification for subcontractor liens on the construction project and any claims defendant might have against plaintiff for a claim defendant asserted arose during the testimony of the final witness, plaintiff's president, concerning a "related party transaction" that is prohibited under the Contract Agreements. In the award, the arbitrator expressly declined defendant's request for the reservation of rights related to those claims.

Following issuance of the arbitration award, plaintiff filed a complaint pursuant to Rule 4:67-1 to confirm the arbitration award. Defendant filed an answer and counterclaim to vacate the arbitration award. Defendant argued the award should be vacated because: the arbitrator manifestly disregarded the law in his interpretation of the Contract Agreements; the arbitrator exceeded his authority by ignoring the plain language of the agreements; the arbitrator refused to consider material evidence related to who was at fault for construction delays; the arbitrator exceeded his power by refusing to reserve defendant's rights to pursue certain claims, potentially precluding defendant from asserting them in the future; and the arbitrator was evidently partial to plaintiff.

After hearing argument, the court rendered a bench opinion first noting neither party had addressed whether the New Jersey Arbitration Act (NJAA),

N.J.S.A. 2A:23B-1 to -36, or the Federal Arbitration Act (FAA), 9 U.S.C.S. §§1 to -16, should be applied in consideration of the parties' arbitration award. However, under either statute's standard for vacatur, compare N.J.S.A. 2A:23B-23 with 9 U.S.C.S. § 10, the court found the same conclusion would result.

The court applied the United States Supreme Court's holding in Oxford Health Plans LLC v. Sutter, 569 U.S. 564 (2013), as the standard for determining whether the award should be vacated based on defendant's claims the arbitrator exceeded his authority and the arbitrator's decision was founded on manifest disregard of the law. The court explained that under the Oxford Health standard, an award must be confirmed so "long as the arbitrator considered the parties' contract and issued a ruling based upon his interpretation of the contract . . . [e]ven if the arbitrator committed a grave error." The court concluded the arbitrator had done "what he was supposed to do" and the court declined to vacate the award on those grounds.

The court also rejected defendant's claim the arbitrator was guilty of misconduct by refusing to hear evidence from defendant's expert and other witnesses concerning the causes of the construction delays. The court found the arbitrator had been provided the proffered expert witness' report as a pre-arbitration submission, and the arbitrator admitted the report as evidence during

7

the arbitration. The court also found the arbitrator properly exercised his discretion "not to listen" to the proffered testimony because the arbitrator determined plaintiff bore no responsibility for the delays as a matter of law under the Contract Agreements. The court also found the mere fact the arbitrator made rulings adverse to defendant did not establish he was evidently partial to plaintiff. Further, the court found the language in the award declining defendant's requested reservation of rights was merely dicta and not binding on either party. The court rejected defendant's request it find the arbitrator exceeded his powers by making a "gratuitous comment" on the reservation of rights that defendant asked him to address.

The court issued orders confirming the arbitration award and denying defendant's claim for vacatur of the award. The order confirming the arbitration award stated the language in the award declining defendant's reservation of rights was "dicta and . . . premature" and the issues "were not the subject of submission" to arbitration.

Defendant appeals from the court's orders. On appeal, defendant asserts, and plaintiff does not dispute, that we should apply the FAA's standard for

vacatur, 9 U.S.C.S. § 10, in our review of the court's orders.  The record also demonstrates the motion court analyzed the issues under the FAA.[2]

## II.

"[T]he decision to vacate an arbitration award is a decision of law [and] this court reviews the denial of a motion to vacate an arbitration award de novo." Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)); see also Metromedia Energy, Inc. v. Enserch Energy Servs., 409 F.3d 574, 579 (3d Cir. 2005) (applying the de novo standard of review in reviewing an order vacating an arbitration award under the FAA).  In considering whether to reverse or affirm an order confirming an arbitration award, we must determine whether the trial court and the arbitrator adhered to the requirements of the controlling statute.  Ibid.

"Review of arbitration awards under the FAA is 'extremely deferential.' Vacatur is appropriate only in 'exceedingly narrow' circumstances[.]"

---

[2] We need not address application of the NJAA since the parties' arguments on appeal rest solely on the standard under the FAA.  Additionally, the parties do not argue the result would be different under the NJAA.  See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding an issue not briefed on appeal is deemed waived); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same).

Metromedia Energy, Inc., 409 F.3d at 578 (quoting Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)). The United States Supreme Court has held that under the FAA, the "exclusive" grounds for vacating an arbitration award are provided in 9 U.S.C.S. § 10. Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008). Thus, an award may be vacated only:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> [9 U.S.C.S. § 10(a).]

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" Oxford Health Plans LLC, 569 U.S. at 568 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995)). "When an arbitrator resolves disputes regarding the application of a contract, and no

10

A-2355-20

dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 39 (1987)).

In reviewing an application to vacate an arbitration award under the FAA, "courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim." Ibid. (alterations in original) (quoting Misco, Inc., 484 U.S. at 37). "Our role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator." Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his [or her] decision may be unenforceable." Garvey, 532 U.S. at 509 (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)); see, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 668-69 (2010) (finding arbitrators exceeded their authority in determining they could decide a class arbitration where the parties stipulated they did not have an agreement to arbitrate a class arbitration).

A-2355-20

On appeal, defendant argues the trial court erred by affirming the arbitration award and declining to vacate the award because the arbitrator's construction of the Contract Agreements manifestly disregarded the law and the award exceeded the arbitrator's authority under 9 U.S.C.S. § 10(a)(4). It is unclear whether manifest disregard of the law constitutes a viable ground for vacatur under the FAA. That ground for vacatur was suggested in Wilko v. Swan, where the Supreme Court found an arbitrator's erroneous interpretation of the law did not support vacatur and suggested an arbitrator's manifest disregard of the law might support vacatur. 346 U.S. 427, 436-37 (1953).

In Hall Street Associates, LLC, the Court seemingly rejected the plaintiff's claim that Wilko added "'manifest disregard of the law' as a further ground for vacatur on top of those listed in" 9 U.S.C. § 10, finding "no reason to accord" Wilko "the significance that [the plaintiff] urge[d]." Hall St. Assocs. LLC, 552 U.S. at 584-85. The Court, however, also noted the "vagueness" in the language used in Wilko to address manifest disregard of the law as a ground for vacatur under the FAA, and observed that some courts interpreted Wilko's reference to "manifest disregard of the law" as a "shorthand for [9 U.S.C.] § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'" Id. at 585. In Stolt-Nielsen S.A, the

Court explained it had not decided whether "manifest disregard" as a ground for vacatur survived Hall Street Associates "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." Stolt-Nielsen S.A, 559 U.S. at 672 n.3.

It remains unclear whether manifest disregard of the law constitutes a viable ground for vacatur under the FAA. For example, the Third Circuit has observed Hall Street Associates "called into question the viability of manifest disregard as an independent ground for vacating an arbitration award[,]" Ross Dress for Less, Inc. v. VIWP, L.P., 750 F. App'x 141, 145 n.1 (3d Cir. 2018), but the court also explained that "[d]espite an emerging Circuit split[,]" it had not resolved the issue, ibid.; see also Schwartz v. Merrill Lynch & Co., 665 F. 3d 444, 452 (2d Cir. 2011) (finding "manifest disregard [of the law] remains a valid ground for vacating arbitration awards" (quoting T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010))).

We need not decide whether the manifest disregard of the law standard survived the Court's decision in Hall Street Associates because even if the standard applied here, the record does not support a finding the arbitrator manifestly disregarded the law. It has been held the standard of review of the judicially created manifest disregard of the law standard "is severely limited."

Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208 (2d Cir. 2002).

Relief under the standard requires "something beyond and different from a mere error in the law or failure on the part of the arbitrator[] to understand and apply the law." Ibid. (quoting Saxis S.S. Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967)); see also Zayas v. Bacardi Corp., 524 F.3d 65, 68 (1st Cir. 2008) (explaining there is an "exceedingly small window of opportunity for vacation of arbitral awards that are 'in manifest disregard of the law'").

To establish an arbitrator manifestly disregarded the law in the Second Circuit, a party challenging an arbitration award must first find the law allegedly disregarded is "well defined, explicit, and clearly applicable." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 934 (2d Cir. 1986). It must also be demonstrated that the arbitrator "appreciate[d] the existence of [this] clearly governing legal principle but decide[d] to ignore or pay no attention to it." Westerbeke, 304 F.3d at 209 (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc., 808 F.2d at 934). In the First Circuit, a manifest disregard of the law is established where the arbitration award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Zayas, 524 F.3d at 68

14

(quoting Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 66 (1st Cir. 2000)).

Here, defendant does not make a showing the arbitrator manifestly disregarded the law under any recognized formulation of the standard. Defendant claims the GMP acted as a cap on general requirements costs—"onsite expenses"—incurred by plaintiff beyond the GMP as adjusted by the change orders, and although the GMP Rider permitted compensation for additional general conditions costs—"plaintiff's management and associated burdens"—there is no similar provision in the Contract Agreements providing compensation for general requirements costs in the event of delays.  It also asserts the change orders unambiguously barred any further compensation because plaintiff agreed to an extension of time in exchange for no further compensation.  Defendant claims the Contract Agreements' exclusion from the "Cost of Work" of off-site personnel and costs, as well as the waiver of consequential damages provision, were ignored by the arbitrator when he awarded plaintiff certain costs associated with plaintiff's "home office personnel."

In asserting the arbitrator manifestly disregarded the law, defendant actually claims only that the arbitrator misinterpreted and misapplied various

A-2355-20

contractual provisions.  However, as the Court explained in Oxford Health, "[b]ecause the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits."  569 U.S. at 569 (quoting E. Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)).  In determining whether an arbitrator exceeded their power in issuing an award under the FAA, a court does not entertain "full-bore legal and evidentiary appeals."  Id. at 568-69 (quoting Hall St. Assocs., LLC., 552 U.S. at 588).  Rather, "the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  Id. at 569.

Here, the arbitration award is grounded in the arbitrator's interpretation of the Contract Agreements.  For example, the arbitrator rejected one of plaintiff's claims for reimbursement of costs based on the waiver of consequential damages provision in the Contract Agreements.  The arbitrator also rejected defendant's argument the change orders barred plaintiff's entitlement to recovery of additional costs based on a determination defendant's interpretation of the contract terms "render[ed] meaningless" language in the GMP Rider entitling plaintiff to "additional or extended general conditions" in the event of delays not

caused by plaintiff. The arbitrator premised his award of general conditions and general requirements on the same contractual provision, interpreting the GMP Rider to "expressly allow[] recovery to [plaintiff] for periods of delay for which it bore no responsibility." The arbitrator's analysis of the many other issues presented is similarly grounded in his interpretation of the Contract Agreements.

Defendant makes no showing the arbitrator recognized a clearly governing legal principle but then decided to ignore it, Westerbeke, 304 F.3d at 209, that the arbitrator's decision is unfounded in reason and logic, is based on reasoning so faulty no judge could conceivably have made the same decision, or is based on a critical assumption of a non-fact, Zayas, 524 F.3d at 68. Thus, defendant makes no showing the arbitration award is founded on a manifest disregard of the law, even assuming that standard remains viable following the Court's decision in Hall Street Associates, LLC.

In tethering his reasoning to his interpretation of the parties' agreements, the arbitrator's award "draw[s] its essence from the contract." E. Associated Coal Corp., 531 U.S. at 62 (quoting Misco, Inc., 484 U.S. at 38). A court will not vacate an arbitration award where the arbitrator "arguably constru[ed] . . . the contract and act[ed] within the scope of his authority," and, even where the "court is convinced he committed serious error[, this] does not

17

suffice to overturn his decision." Ibid. (quoting Misco, Inc., 484 U.S. at 38).

"The potential for . . . mistakes is the price of agreeing to arbitration" as an

"arbitrator's construction [of the contract]" is what is "bargained for; and so far

as the arbitrator's decision concerns construction of the contract, the courts have

no business overruling him [or her] because their interpretation of the contract

is different from his." Oxford Health Plans LLC, 569 U.S. at 572-73 (second

alteration in original) (quoting Enter. Wheel & Car Corp., 363 U.S. at 599). "So

long as the arbitrator was 'arguably construing' the contract . . . a court may not

correct his [or her] mistakes under §10(a)(4)." Id. at 572 (quoting E. Associated

Coal Corp., 531 U.S. at 62).

Defendant next argues the trial court erred in declining to vacate the award

under 9 U.S.C. § 10(a)(3), because the arbitrator did not the testimony of three

witnesses, two of defendant's architects and a "delay expert," who defendant

avers would have testified plaintiff was responsible for the delays and therefore

not entitled to any compensation under the GMP Rider. Defendant concedes the

arbitrator accepted its "delay expert['s]" report as a pre-arbitration submission.

An arbitration award may be vacated under 9 U.S.C. § 10(a)(3) "where

the arbitrators were guilty of misconduct . . . in refusing to hear evidence

pertinent and material to the controversy." However, "Section 10(a)(3) 'cannot

18

be read, . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award.'" Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 557 (3d Cir. 2009) (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968)). Rather, "misconduct under § 10(a)(3) will not be found 'unless the aggrieved party was denied a fundamentally fair hearing.'" Vitarroz Corp. v. G. Willi Food Int'l Ltd., 637 F. Supp. 2d 238, 248 (D.N.J. 2009) (quoting Sherrock Bros. v. DaimlerChrysler Motors Co., LLC, 260 F. App'x 497, 501 (3d Cir. 2008)).

"[I]t is clear that 'in making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts.'" Century Indem. Co., 584 F.3d at 557 (quoting Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 481 F.3d 813, 816 (D.C. Cir. 2007)). "It is well within an arbitrator's authority to refuse to hear evidence that is cumulative or of little relevance." Lessin, 481 F.3d at 817 (citations omitted).

Our determination of whether defendant was afforded a fundamentally fair hearing is complicated by the absence of any record of the arbitration proceedings. It is further complicated by defendant's assertion, made in his counterclaim to vacate the award, that the arbitrator found plaintiff was not at

19

fault for delays without hearing testimony from its witnesses, and defendant's simultaneous but incongruous assertion its "witnesses testified that [construction] delays were primarily caused by" plaintiff.

In any event, based on the record presented, we are not convinced defendant was denied a fair hearing by the arbitrator's decision to exclude the testimony of the witnesses. Defendant proffers that the witnesses would have testified plaintiff was at fault for the delays resulting from the change orders. The arbitrator, however, concluded the testimony was unnecessary because fault for the delays could be determined as a matter of law under the Contract Agreements. More particularly, the arbitrator determined that, as a matter of law, defendant was at fault for the delays because under the parties' plain agreement, as reflected in the Contract Agreements, change orders could only be granted for delays for which plaintiff was not responsible. Thus, the arbitrator determined that by the express agreement of the parties, any delays resulting from change orders were delays for which plaintiff bore no responsibility.

It is for the arbitrator "to decide issues of relevance [or] . . . admissibility of evidence," Ass'n of Flight Attendants, AFL-CIO v. USAir, Inc., 960 F.2d 345, 350 (3d Cir. 1992), and it was within the arbitrator's discretion to exclude

20

testimony that was irrelevant to what he determined to be a legal issue governed by the parties' agreement concerning delays resulting from change orders, Lessin, 481 F.3d at 817. We discern no error in the arbitrator's decision the proffered testimony was unnecessary; it was based on his reasoned interpretation of the Contract Agreements.

Moreover, even if the arbitrator erred in not hearing testimony from three witnesses concerning the fault for the delays, defendant makes no showing exclusion of the testimony deprived defendant of "a fundamentally fair hearing." Vitarroz Corp., 637 F. Supp. 2d at 248 (quoting Sherrock Bros., 260 F. App'x at 501). To provide a fair hearing, an arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997) (quoting Hoteles Condado Beach v. Union de Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir. 1985)).

Here, although there is no transcript of the proceedings, it is clear the arbitrator was provided with defendant's expert report detailing its position concerning responsibility for the delays. The report comprehensively addresses various delays and includes an unequivocal opinion that plaintiff, and not defendant, caused the delays. In its post-hearing brief, defendant also argued at

21

length that the parties' agreement to change orders alone did not preclude a finding plaintiff was responsible for the delays.

Although the arbitrator limited evidence on the delay-fault issue, in accepting the expert's report and permitting argument as to whether the change orders amounted to an agreement plaintiff bore no responsibility for the delays, the arbitrator gave defendant "an adequate opportunity to present its evidence and arguments" on this issue. Vitarroz Corp., 637 F. Supp. 2d at 250-51 (quoting Sunshine Mining Co. v. United Steelworkers of Am., AFL-CIO, 823 F.2d 1289, 1295 (9th Cir. 1987)). In the end, however, the arbitrator's decision to limit the evidence on the issue was within his discretion and was consistent with his legal conclusion the parties had agreed that change orders would be issued only where plaintiff was not at fault and, as such, as a matter of law there was no need for additional evidence on the fault issue. We do not find the decision barring the testimony constituted misconduct warranting vacatur under 9 U.S.C. § 10(a)(3) or "deprive[d] defendant[] of a fundamentally fair hearing." Id. at 251. The trial court did not err in declining to vacate the award on those grounds.

We also find no merit to defendant's argument the trial court erred by declining to vacate the arbitration award because the arbitrator allegedly demonstrated evident partiality in plaintiff's favor. Vacatur under 9 U.S.C. §

22

10(a)(2) is permitted "where there was evident partiality or corruption in the arbitrator[]." "[T]o show evident partiality, . . . the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration." Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 252 (3d Cir. 2013) (first alteration in original) (quoting Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1523 n.30 (3d Cir. 1994)). "[E]vident partiality is strong language and requires proof of circumstances powerfully suggestive of bias." Ibid. (quoting Kaplan, 19 F.3d at 1523 n.30). The bias must be "sufficiently obvious that a reasonable person would easily recognize it." Id. at 253.

Here, defendant's argument is premised on the various determinations made by the arbitrator in plaintiff's favor that it challenges on appeal. Defendant simply asserts there is "no colorable" justification for the decisions made by the arbitrator. As the District of Columbia District Court aptly explained in considering a similar assertion of an arbitrator's partiality, "[a]lthough a series of unfavorable rulings by the arbitrator may produce an appearance of bias in the eyes of the unsuccessful party, it does not justify vacating the arbitration award." Thian Lok Tio v. Wash. Hosp. Ctr., 753 F. Supp. 2d 9, 18 (D.D.C. 2010). Beyond the arbitrator's unfavorable determinations related to the issues

23

submitted to arbitration, defendant does not offer any proof of circumstances that suggest improper bias, let alone any that "powerfully" suggest bias. Freeman, 709 F.3d at 252. The trial court did not err in concluding there was no evidence of partiality to support vacating the award under 9 U.S.C. § 10(a)(2).

We also reject defendant's argument the trial court erred in declining to vacate the award because the arbitrator exceeded his power by failing to include a reservation of rights in the award and "potentially [and] improperly barred [d]efendant's [f]uture [i]ndemenification [c]laims" as well as defendant's potential future claims against plaintiff and its president for claims related to the alleged interested party transaction under New Jersey's entire controversy doctrine. At oral argument, plaintiff agreed that no claims by defendant for indemnification from plaintiff for subcontractor liens on the project, and no claims by defendant against plaintiff for violation of the related-party-transaction provision of the Contract Agreements, were presented to the arbitrator for decision or were decided by the arbitrator in the award. Plaintiff also agreed that nothing in the arbitration award, in the litigation concerning the vacatur or affirmance of the award, or in this appeal precludes defendant from

pursuing the subcontractor indemnification or related-party claims in other proceedings.

Our review of the arbitration record and the arbitration award is consistent with the parties' representations at oral argument. Although we affirm the court's orders confirming the arbitration award and denying defendant's request to vacate the award, neither the arbitration award, the Law Division's orders, nor this opinion shall be interpreted as barring defendant's right to pursue claims against plaintiff for indemnification for subcontractor's liens on the project or defendant's claims for violation of the related-party transaction provision of the Contract Agreements.

Defendant may therefore prosecute "claims against [p]laintiff for contractual indemnification and reimbursement of [d]efendant's attorney's fees and costs that [may be] be incurred in . . . enforcement proceedings involving [p]laintiff's subcontractor liens against" defendant and its property. Defendant is similarly free to prosecute claims arising from "[p]laintiff's and [plaintiff's president] Mr. Gary Krupnick's" alleged "failures to disclose their conflict of interest when recommending and pushing for [d]efendant's use of the Eco Span structural support system in which" defendant claims "they had a financial interest." We do not express an opinion on the merits of any of these claims,

25                                                                    A-2355-20

but simply note they are not barred by the arbitration award or any of the ensuing proceedings through this appeal.

Any arguments asserted on defendant's behalf we have not directly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION